UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 20-72185-JRS |
| GREATER WORKS CHILDCARE AND | : | |
| COMMUNITY DEVELOPMENT INC., | : | Chapter 11 |
| | : | |
| Debtor. | : | |
| | : | |

## FIRST AMENDMENT TO PLAN OF L1QUIDATION

### ARTICLE I
### SUMMARY

This First Amendment amends the Plan of Liquidation filed on September 24, 2021 [Doc. No. 46] by amending Article V, Section 5.01 to accurately reflect the agreed Plan treatment for the Class 1 claim of US Bank, National Association as Trustee For Velocity Commercial Capital Loan Trust 2018-2. The Plan of Liquidation, as hereby amended, is hereinafter referred to as the "Plan".

This Plan provides for two classes of secured creditors and one class of unsecured creditors. The Plan also provides for the payment of administrative and priority claims.

All creditors and parties in interest should refer to Articles IV through VII of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

### ARTICLE II
### GENERAL PROVISIONS AND DEFINITIONS

2.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

(a)    "Avoidance Action" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551

–1–

or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

(b) "Causes of Action" means all Avoidance Actions and any and all of Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

(c) "Confirmation Date" means the date upon which the Court enters the Confirmation Order.

(d) "Confirmation Order" means the Order of the Court confirming the Plan.

(e) "Disclosure Statement" means the Disclosure Statement Regarding Debtor's Plan of Reorganization filed on September 24, 2021 [Doc. No. 47].

(f) "Effective Date" of this Plan is the first (1st) business day following the date that is fourteen (14) days after the entry of the Confirmation Order; but if a stay of the Confirmation Order is in effect on that date, then the Effective Date will be the first (1st) business day after that date on which no stay of the confirmation order is in effect provided that the Confirmation Order has not been vacated.

(g) "Estate" means, with regard to Debtor, the estate that was created by the commencement by Debtor of the bankruptcy case pursuant to sections 541 and 1115 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, Causes of Action, Retained Actions, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise as provided by sections 541 and 1115 of the Bankruptcy Code.

(h) "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

(i) "Petition Date" means November 30, 2020, the date upon which Debtor filed its Voluntary Petition.

(j) "Property" means 1.09 acres in Gwinnett County, Georgia improved with a 7,256 square foot day care building having a local address of 917 Killian Hill Road, SW, Lilburn, Georgia 30047 titled in Debtor's name.

(k)    "Reorganized Debtor" means Debtor on and after the Confirmation Date.

(l)    "Retained Action" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims and Causes of Action relating to strict enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.02    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

2.03    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and inure to the benefit of, the successors or assigns of such entity, whether or not such entities are impaired and whether or not such entities have accepted the Plan.

2.04    Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

2.05    Controlling Effect. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under the Plan shall be governed by the laws of the State of Georgia.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

3.01 Class 1. Class 1 shall consist of the claim of US Bank, National Association as Trustee For Velocity Commercial Capital Loan Trust 2018-2 to the extent allowed as a secured claim under § 506 of the Code

3.02    Class 2. Class 2 shall consist of the claim of Tenisha Dale to the extent allowed as a secured claim under § 506 of the Code.

3.03    Class 3. Class 3 shall consist of all general unsecured claims allowed under § 502 of the Code not otherwise treated herein.

–3–

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS

4.01    <u>Unclassified Claims</u>.  Under section §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

4.02    <u>Administrative Expense Claims</u>.    Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and Debtor.

4.03    <u>Priority Tax Claims</u>.  Each holder of a priority tax claim will be paid consistent with Section 1129(a)(9)(C) of the Bankruptcy Code.  Specifically, upon information and belief Debtor states that Department of Treasury - Internal Revenue Service asserts a claim in the amount of $22,547.97 ($4,400.51 unsecured priority + $18,147.46 general unsecured ).  Under the Plan, Debtor shall repay the $4,400.51 priority portion of the claim together with interest thereon at the per annum rate of 5% amortized over 60 months from the Petition Date, in monthly installments of principal and interest in the amount of $103.35, beginning on the 1st calendar day of the first 1st calendar month following the Effective Date and on the like day of each consecutive month thereafter until said claim is paid in full as proved herein, with the entire then outstanding amount to be paid in full on June 19, 2022.  Once the priority claim is paid in full as provided herein, the taxing authority shall promptly release any liens that it may hold. Until such time, however, the taxing authority shall retain any liens that it may hold. The $18,147.46 general unsecured portion of the claim shall be treated as a Class 3 claim and paid accordingly.

4.04    <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

5.01    <u>Claims and interests shall be treated as follows:</u>

**Class 1 – Claim of US Bank, National Association as Trustee For Velocity Commercial Capital Loan Trust 2018-2 to the extent allowed as a secured claim under § 506 of the Code.**  Impaired.  Debtor is indebted to **of** US Bank, National Association as Trustee For Velocity Commercial Capital Loan Trust 2018-2 ("US Bank") pursuant to that certain Semi-Annual Adjustable Term Note, dated April 30, 2018, from Debtor to Velocity Commercial Capital, LLC ("**Original Lender**"), in the original principal amount of $700,000.00, known as Loan No. xxxx18 (as assigned to US Bank, the "**Note**"). The Note is secured by the Property and the rents therefrom (the "Rents," with the Property, being the "Collateral").  The Collateral is

–4–

encumbered by that certain Deed to Secure Debt, Security Agreement and Assignment of Leases and Rents, dated April 30, 2018, from Debtor to Original Lender, recorded in Deed Book 55946, Page 620, Gwinnett County Official Records (as assigned, the "**Security Deed**"). The Collateral is further encumbered by that certain Writ of Fieri Facias, reducing the indebtedness demonstrated by the Note to judgment held by US Bank based on Judgment obtained against Debtor on September 21, 2020, in the principal amount of $921,253.91, recorded on November 18, 2020 at Lien Book 5663, Page 154, Gwinnett County, Georgia records (the "**Judgment Lien**"). Upon information and belief, US Bank asserts a claim as of August 16, 2021 in the amount of $1,070,724.20 [see Doc. No. 28, p. 5 ¶ 10].

Reference is hereby made to that certain *Interim Consent Order On Motion To Dismiss Case Or In The Alternative To Lift The Automatic Stay* entered September 15, 2021 [Doc. No. 40] ("Interim Order") pursuant to which Debtor is making adequate protection payments to US Bank in the amount of $8,000.00 per month beginning on November 10, 2021 and on the 10th day of each month thereafter until up to and including June 10, 2022.

The Plan provides that, in repayment of the amount due to US Bank, Debtor shall continue to pay $8,000.00 per month to US Bank as and when the same comes due as provided in the Interim Order up to and including June 10, 2022. The outstanding balance of the Note shall be due in full on or before June 19, 2022. The Debtor may prepay the amounts due to US Bank at any time in part or in full without penalty. US Bank shall promptly release its liens and security interests once its claim is paid in full as provided herein. Until such time, however, US Bank shall retain its lien and security interest.

Notwithstanding anything contained in the Plan to the contrary, should Debtor fail to tender to US Bank any payment required by the Plan, then US Bank may provide written notice ("Default Notice") to Debtor and Debtor's counsel by e-mail notifying Debtor of the specific default and the requirements in order to timely cure the default. The email address for Debtor is jbasil71@gmail.com and the email address for Debtor's counsel is paul.marr@marrlegal.com or as Debtor may otherwise notify US Bank's counsel in writing. Debtor shall have 5 days from the date of the Default Notice to cure such default. Should Debtor fail to cure the default within the 5 day cure period, then the automatic stay of 11 U.S.C. § 362 shall be deemed to have been immediately lifted as to the Collateral without further notice or hearing. Notwithstanding anything continued herein to the contrary, in no event shall US Bank be required to provide a monthly Default Notice more than 4 times during the term of the Plan.

**Class 2 – Claim of Tenisha Dale, to the extent allowed as a secured claim under § 506 of the Code.** Impaired. Tenisha Dale obtained a judgment against Debtor recorded May 20, 2020 in the amount of $29,385.00. Under the Plan, Debtor shall pay $29,385.00 to Tenisha Dale on or before June 19, 2022 in satisfaction of the claim. Tenisha Dale shall promptly release its lien once the claim is paid as provided herein. Until such time, however, Tenisha Dale shall retain her lien and judgment.

**Class 3 – General Unsecured Claims.** Impaired. This class consists of all non-insider persons and entities not otherwise classified and treated herein holding allowed general

unsecured claims. Known Class 3 Claims are as follows: Internal Revenue Service $18,147.46 and Georgia Power Company $1,091.76. Under the Plan, Class 3 claims shall be paid in full on June 19, 2022.

     5.02   <u>Intentionally omitted</u>.

     5.03   <u>Unclaimed Distributions</u>. "Unclaimed distributions" shall mean (a) any funds returned as undeliverable without a proper forwarding address and (b) checks not presented and paid within ninety (90) days of their distribution by Debtor to claimants. Unclaimed distributions shall be held by Debtor for a period of one hundred and eighty (180) days after a distribution is made, after which time the unclaimed distribution shall be deemed as unclaimed by the intended recipient and may be distributed to other claimants within the same class pro rata at that time or as part of the next regularly scheduled distribution.

     5.04   <u>Rounding</u>. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

     5.05   <u>De Minimis Distributions</u>. Reorganized Debtor shall have no obligation to make a distribution if the amount to be distributed to the specific holder of the Allowed Claim has a value less than Fifteen Dollars ($15.00).

     5.06   <u>Method of Cash Distribution</u>. Any cash payment to be made pursuant to the Plan may be made by draft, check, wire transfer, or as otherwise provided in any relevant agreement or applicable law. Any payment due on a Holiday shall be made, without interest, on the next following day that is not a Holiday.

     5.07   <u>Prepayment</u>. Provided that it is not in default of its obligations under this Plan, Debtor may prepay, without penalty, all or any portion of any allowed claim, at any time, but shall not have any obligation to do so.

## ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

     6.01   <u>Reservation of rights</u>. Nothing herein shall constitute an admission as to the nature, validity, or amount of the claims treated herein. Debtor reserves the right to object to any and all claims.

     6.02   <u>Disputed Claim</u>. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and Debtor has scheduled such claim as disputed, contingent, or unliquidated.

     6.03   <u>Delay of Distribution on a Disputed Claim</u>. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

6.04   <u>Settlement of Disputed Claims</u>. Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01   <u>Assumed Executory Contracts and Unexpired Leases</u>.

The Debtor has filed a Motion seeking entry of a Court Order authorizing it to lease the Property to Black Star Management LLC.  Assuming that such a Court Order is entered, then the Debtor will be deemed to have assumed the lease upon the Effective Date pursuant to Section 365 of the Bankruptcy Code.  Debtor will be conclusively deemed to have rejected any executory contract and/or unexpired lease not expressly assumed herein.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION OF THE PLAN

8.1   <u>Parties Responsible for Implementation of the Plan</u>. Upon confirmation, Debtor will be charged with administration of this bankruptcy case. Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan.  Debtor will file all post-confirmation reports required by the United States Trustee's office. Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process.  Debtor may be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtor. The fee associated with the Debtor's motion to reopen Debtor's case may be waived, and Debtor may not be responsible for payment of such to the Clerk of Court for the Bankruptcy Court of the Northern District of Georgia or otherwise.

8.2   <u>Sources of Cash for Distribution</u>.  Debtor shall pay all claims from Debtor's cash reserves, from post-petition income, and from proceeds generated from sale of the Property.  The Plan contemplates that the Debtor will sell the Property on or before June 19, 2022 and pay all creditors in full.  The Plan provides that Debtor shall act as the disbursing agent to make payments under the Plan unless Debtor appoints some other person or entity to do so. Debtor may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtor may also pay ordinary and necessary expenses of administration of the Plan in due course.

8.3   <u>Preservation of Causes of Action</u>. In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtor will retain and may (but is not required to) enforce all Retained

–7–

Actions. After the Effective Date, Debtor, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtor (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtor (or any successors holding such rights of action). The failure of Debtor to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such claim, right of action, suit, proceeding or other Retained Action, and Debtor will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtor reserves all causes of actions for breach of any former or now existing agreement or otherwise. Debtor specifically reserves any cause of action against any of Debtor's account debtors related to underpayment or non-payment of any fees, or other monies or receivables due. Neither the Disclosure Statement nor Plan shall be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws. Debtor expressly reserves the right to exercise any and all remedies available to Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as Debtor from time to time may elect. The Disclosure Statement and Plan are filed with a full reservation of rights. Any failure by Debtor to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtor hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtor may be entitled to applicable law. No delay on the part of Debtor in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. The Disclosure Statement and Plan are filed with a full reservation of rights.

8.4     Effectuating Documents, Further Transactions. Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

8.5     Further Authorization. Debtor shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

8.6     Liabilities of the Debtor. Debtor will not have any liabilities except those expressly stated or assumed under the Plan. Debtor will be responsible for all expenses incurred by Debtor in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

8.7    <u>Management of the Debtor</u>. John Robinson is the Debtor's sole officer. He does not receive any compensation. No change in the ownership, management, and compensation structure is contemplated post-confirmation.

# ARTICLE IX
## DISCHARGE AND INJUNCTION

9.01.    <u>Discharge</u>. On the Effective Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6) of the Code.

9.02    <u>Permanent Injunction</u>. The Confirmation Order shall operate as an injunction against any acts against the Reorganized Debtor and its property to initiate, prosecute, enforce, liquidate, collect or otherwise assert any claim or interest against the Reorganized Debtor and its property except as specifically provided in the Plan.

# ARTICLE X
## OTHER PROVISIONS

10.01    <u>Continued Corporate Existence and Vesting of Assets in Reorganized Debtor</u>. The Reorganized Debtor shall continue to exist after the Effective Date as a separate corporate entity, with all the powers of a corporation under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law. On or after the Effective Date, all property of the estate of Debtor shall vest in the Reorganized Debtor, free and clear of any and all claims, liens, charges or other encumbrances or interests except as may be specifically provided for otherwise in the Plan. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and dispose of property without supervision or approval of the Bankruptcy Court, except as may be otherwise set forth herein.

10.02    <u>Cram-down</u>. Debtor will, if necessary, rely upon the "cram-down" provisions of 11 U.S.C. § 1129(b) for the purpose of obtaining confirmation of the Plan, and requests that the Plan be confirmed pursuant to Section 1129(b) of the Bankruptcy Code in the event that all requirements for confirmation are met except the provisions of Section 1129(a)(8).

10.03    <u>Dates</u>. If any date or deadline provided for in this Plan falls on a Saturday, Sunday, federal holiday, or day recognized as a holiday by the government of the State of Georgia (a "Holiday"), then the actions or event required by such date shall be automatically extended to the next day that is not a Holiday.

10.04    <u>Default</u>. In the event of a default by the Reorganized Debtor under the Plan or otherwise, the holder of such claim must send written notice to the Reorganized Debtor at the

address of record for Debtor as reflected on the docket for this bankruptcy case, unless Debtor has served such holder a written notice of a change of address for the Reorganized Debtor. Such notice must contain the reason for the default and if such default is monetary, the amount of the default, as well as notice that the Debtor has fifteen (15) business days to cure such default (and the address for payment in the event of a monetary default). The holder of such claim must send such notice to Debtor via certified mail, with a courtesy copy via email and regular mail to attorney Paul Reece Marr at the addresses reflected in the then current directory of the State of Bar of Georgia, or to such other attorney as the Reorganized Debtor may have so notified said creditor. Receipt of the notice by the Reorganized Debtor's attorney is for courtesy only and shall not be deemed receipt by the Reorganized Debtor of the required notice. If the Reorganized Debtor does not cure said default within such time frame, then the claimant may exercise any and all rights and remedies it may have under applicable law and/or seek such relief as may be appropriate in this Court. In addition, the Court may retain jurisdiction to hear certain matters even after the case has been closed.

10.05    Final Order. An Order shall become a "Final Non-appealable Order" when it has not been reversed, stayed, modified or amended; when the time to appeal or seek *certiorari*, review or rehearing has expired or been effectively waived; and when such Order has become conclusive on all matters adjudicated thereby and is in full force and effect.

10.06    Modification of the Plan. The Reorganized Debtor may modify this Plan pursuant to §1127 of the Bankruptcy Code and as herein provided, to the extent applicable law permits. Said modification may be without notice or hearing, or after such notice and hearing as the Court deems appropriate, if the court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. Without limiting the generality of the foregoing, the Plan may be modified after notice and hearing to entities which have requested notice pursuant to Bankruptcy Rule 2002(i). In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Court finds that the modification materially and adversely attests the rights of parties in interest which have cast said votes. The Debtor reserves the right in accordance with §1127 of the Bankruptcy code to modify this Plan at any time before the Confirmation Date.

10.07    No Transfer Tax. As provided in 11 U.S.C. § 1146(c), no transfer or recordation tax or stamp tax or similar tax shall be imposed with respect to the transfer (including sale) of any real estate contemplated under this Plan once confirmed or any other property on which a transfer tax may be imposed which may be exempted by 11 U.S.C. § 1146(c).

10.08    Post-Effective Date Retention of Professionals. Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtor will employ and pay professionals in their ordinary course of business.

10.09    Reservation of Rights. Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking by any creditor of any action with respect to the Plan,

shall (1) be or be deemed to be an admission against interest, and (2) until the Effective Date, be or be deemed to be a waiver of any rights which any party in interest may have against any other party in interest or any of its property, and until the Effective Date all such rights are specifically reserved. In the event that the Effective Date does not occur, neither the Plan nor any statement contained in the Plan may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside of the reorganization case involving the Reorganized Debtor.

10.10    <u>Retained rights</u>. The Reorganized Debtor retains all rights to seek turnover of estate property, avoidance of fraudulent or preferential transfers, to avoid post-petition transfers, and/or to assert its strong-arm powers, including all rights under 11 U.S.C. §§ 542, 544, 547, 548 and 549, regardless of whether demand has been made or an adversary proceeding or other action has been filed prior to or after confirmation of this Plan, and all such rights to pursue causes of action are vested in the Reorganized Debtor by this Plan. The Reorganized Debtor retains all rights to object to Proofs of Claim, previously scheduled claims and informal claims.

10.11    <u>Revocation of Plan</u>. Debtor reserves the right, unilaterally and un conditionally, to revoke and/or withdraw the Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal the Plan shall be deemed null and void and of no force and effect.

10.12    <u>Successors and Assigns</u>. The rights, duties and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

10.13    <u>Supremacy Clause</u>. In the event of any conflict between the Disclosure Statement and the Plan, the terms of the Plan shall control.

**10.14    <u>Tax Consequences</u>. Tax consequences resulting from confirmation of the Plan can vary greatly among the various classes of creditors and holders of interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the claims of various creditors, the taxpayer status and methods of accounting and prior actions taken by creditors with respect to their claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any creditor or holders of an interest are represented, implied, or warranted. each holder of a claim or interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation. The proponent assumes no responsibility for the tax effect that consummation of the Plan will have on any given holder of a claim or interest. Holders of claims or interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.**

10.15    <u>Retention and Scope of Jurisdiction of the Bankruptcy Court</u>.

(a)    <u>Retention of Jurisdiction</u>. Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

(i)    to adjudicate objections concerning the allowance, priority or classification of claims and any subordination thereof, and to establish a date or dates by which objections to claims must be filed to the extent not established herein;

(ii)    to liquidate the amount of any disputed, contingent or unliquidated claim, to estimate the amount of any disputed, contingent or unliquidated claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated claim;

(iii)    To resolve all matters related to the rejection, and assumption and/or assignment of any executory contract or unexpired lease of the Debtor;

(iv)    To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor and/or Reorganized Debtor;

(v)    To hear and rule upon all applications for professional compensation;

(vi)    To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

(vii)    To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

(viii)    To adjudicate controversies arising out of the administration of the Estate or the implementation of this Plan;

(ix)    To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the distribution of funds from the Estate and the payment of claims;

(x)    To determine any suit or proceeding brought by the Debtor and/or the Reorganized Debtor to recover property under any provisions of the Bankruptcy Code;

(xi)    To hear and determine any tax disputes concerning the Debtor and to determine and declare any tax effects under this Plan;

(xii)    To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(xiii)   To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

(xiv)   To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtor sold any of its assets during the Bankruptcy Case; and

(xv)    To enter a final decree.

(b)    <u>Alternative Jurisdiction</u>. In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

WHEREFORE, Debtor proposes the within and foregoing "First Amendment to Plan of Liquidation ".

Dated: October 22, 2021

Prepared and submitted,
PAUL REECE MARR, P.C.
Debtor's counsel

GREATER WORKS CHILDCARE AND
COMMUNITY DEVELOPMENT INC.

 /s/ Paul Reece Marr
Paul Reece Marr
Georgia Bar No. 471230
1640 Powers Ferry Road
Building 24, Suite 350
Marietta, GA 30067
770-984-2255
paul.marr@marrlegal.com

/s/ John Robinson
John Robinson
Its: C.E.O.

–13–

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

In re:                                              :
                                                    :        Case No. 20-72185-JRS
GREATER WORKS CHILDCARE AND                         :
COMMUNITY DEVELOPMENT INC.,                         :        Chapter 11
                                                    :
        Debtor.                                     :
                                                    :
_____             :

CERTIFICATE OF SERVICE

        This is to certify that I have on this day electronically filed the foregoing *FIRST
AMENDMENT TO PLAN OF LIQUIDATION* using the Bankruptcy Court's Electronic Case
Filing program which sends a notice of this document and an accompanying link to this
document to all registered parties who have filed appearances in the above captioned case.

        In addition, on this day I caused copies of the document to be served via first class U.S.
Mail, with adequate postage prepaid, on those parties on the attached mailing matrix at the
address shown for each.

        This the 22nd day of October, 2021.

                                                    /s/ Paul Reece Marr
                                                    Paul Reece Marr
                                                    GA Bar No. 471230

PAUL REECE MARR, P.C.
1640 Powers Ferry Road
Building 24, Suite 350
Marietta, GA 30067
770-984-2255
paul.marr@marrlegal.com

–14–

Label Matrix for local noticing
113E-1
Case 20-72185-jrs
Northern District of Georgia
Atlanta
Fri Oct 22 16:58:04 EDT 2021

Brooks, McGinnis & Company, LLC
5607 Glenridge Drive
Two Premier Plaza
Suite 650
Atlanta, GA 30342

Celtic Bank
Attn: JoAnne Robinson
268 S. State Street, Suite 300
Salt Lake City, UT 84111-5314

Lisa A Frank
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, GA 30076-2102

Georgia Power Company
2500 Patrick Henry Pkwy
BIN 80003
MCDONOUGH, GA 30253-4298

Greater Works Childcare and Community Develo
917 Killian Way
Lilburn, GA 30047

INTERNAL REVENUE SERVICE
P O BOX 7346
2970 MARKET STREET
PHILADELPHIA, PA. 19104-5002

Internal Revenue Service
P. O. Box 7346
Philadelphia, PA 19101-7346

John Robinson
917 Killian Hill Road SW
Lilburn, GA 30047-3137

Paul Reece Marr
Paul Reece Marr, P.C.
Building 24, Suite 350
1640 Powers Ferry Road
Marietta, GA 30067-5491

Nationstar Mortgage, LLC
dba Mr. Cooper
PO Box 818060
Cleveland, OH 44181-8060

SBA
Georgia District Office
233 Peachtree Street, NE; #190
Atlanta, GA 30303-1504

Secretary of the Treasury
15th & Pennsylvania Avenue, NW
Washington, DC 20200

William Oxford Tate
McCalla Raymer, Pierce, LLC
1544 Old Alabama Road
Roswell, GA 30076-2102

Tenisha Dale
c/o Romero T. Pearson, Esq.
16 Towne Park Drive
Lawrenceville, GA 30044-4665

U. S. Securities and Exchange Commission
Office of Reorganization
Suite 900
950 East Paces Ferry Road, NE
Atlanta, GA 30326-1382

US Bank, N.A.
c/o Lisa A. Frank, Esq.
1544 Old Alabama Road
Roswell, GA 30076-2102

United States Trustee
362 Richard Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303-3315

Velocity Comml. Capital LLC
Ivan Lopez
30699 Russel Ranch Road; #295
Thousand Oaks, CA 91362-7325

David S. Weidenbaum
Office of the U.S. Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303-3330

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)U.S. Bank, National Association

End of Label Matrix
Mailable recipients    19
Bypassed recipients     1
Total                  20